IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHERYL MONTGOMERY, et al.,    :
    :
    Plaintiffs,    :
    :
    v.    :    Case No. 1:07-cv-01240
    :    Judge Roberts
STG INTERNATIONAL, INC.,    :
    :
    Defendant.    :

**DEFENDANT STG'S MOTION TO SEVER, TO TRANSFER AND FOR AN
EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINTS**

Defendant, STG INTERNATIONAL, INC. ("STG"), by and through its undersigned attorneys, Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered, files this motion to sever, for change of venue and to extend time to file an answer to Plaintiffs' complaints. For the reasons set forth in the accompanying Memorandum of Points and Authorities, STG hereby requests that this Court: (1) separate Plaintiffs' lawsuits into separate actions pursuant to Fed. R. Civ. P. 21 because Plaintiffs' alleged claims arise out of individualized transactions, not a unified series of events, and do not raise common questions of fact or law and, therefore, do not meet the requirements for joinder of claims under Fed. R. Civ. P. 20(a); (2) dismiss or transfer Plaintiffs severed claims to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404 because it is a more convenient forum; and (3) extend the time for STG to file an answer to Plaintiffs' Complaints pending

resolution of the foregoing issues and the filing of an amended complaints by Plaintiffs.


PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG  & COOPER, CHARTERED



By: _____/s/_____
       Hope B. Eastman, Bar No. 55517
       James R. Hammerschmidt, Bar No. 448128
4800 Hampden Lane, 7th Floor
Bethesda, Maryland 20814
(301) 656-7603
Attorneys for Defendants


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 4th day of September, 2007, a copy of the foregoing Motion to Sever, For a Change of Venue and for an Extension of Time to Respond to Plaintiffs' Complaints was transmitted electronically pursuant to the system of the United States District Court for the District of Columbia and that the same will be available to Plaintiff's counsel.


_____/s/_____
Hope B. Eastman

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHERYL MONTGOMERY, et al.,      :
                            :
           Plaintiffs,      :
                            :
     v.                  :   Case No. 1:07-cv-01240
                            :   Judge Roberts
STG INTERNATIONAL, INC.,     :
                            :
          Defendant.     :

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT STG'S MOTION TO SEVER, TO TRANSFER AND FOR AN
<u>EXTENSION OF TIME TO RESPOND TO PLAINTIFFS' COMPLAINTS</u>**

**Background**

Plaintiffs, Cheryl Montgomery ("Montgomery") and Gregory Bigelow ("Bigelow"), both

Virginia residents and former management employees of STG International, Inc. ("STG"), a Virginia

corporation, jointly filed a Complaint in the United States District Court for the District of Columbia

for claims arising out of their employment with STG.  STG seeks to sever their claims into two

separate cases and to transfer these cases to the Eastern District of Virginia because their

individualized claims are misjoined and because all decisions about their individual situations

occurred in Virginia and not in the District of Columbia.

Montgomery, who was a Program Manager for one of STG's government contracts, alleged

causes of action for race discrimination, hostile work environment, retaliation and unlawful

termination under 42 U.S.C. §1981; hostile work environment, race discrimination, age

discrimination and retaliation under the District of Columbia Human Rights Act and a common law

claim for wrongful discharge.

Bigelow, STG's Assistant Controller, alleged causes of action including race discrimination,

1

hostile work environment, and unlawful termination under 42 U.S.C. § 1981; hostile work environment, race discrimination, and age discrimination under the District of Columbia Human Rights Act and a common law claim for wrongful termination.

Bigelow at all times worked for STG in Alexandria, Virginia.  All decisions about his employment were made in Virginia.  While Montgomery was detailed to a client site in the District of Columbia, she did some of her work in Virginia and all decisions about which she complains in her complaint were made by executives in Virginia.  The complaint alleges no acts in the District of Columbia.  They worked at different jobs, in different departments, and for different supervisors who made the decisions with respect to their employment.  Plaintiffs' claims should be severed pursuant to Rule 21 of the Federal Rules of Civil Procedure, and be transferred for reasons of convenience and justice  pursuant to 28 U.S.C. § 1404(a).

### Facts

STG provides federal government agencies with a diverse array of mission-critical services in the areas of healthcare programs and medical services, human capital management, management consulting and information technology, and professional and administrative services.  *See* Affidavit of Ellen Duncan, ¶ 2 (hereafter " Duncan Aff., ¶ ___.").  STG is headquartered in Alexandria, Virginia, and has no office in the District of Columbia ("STG's Virginia corporate headquarters").  *See* Duncan Aff., ¶ 2.  It is registered to do business in D.C. in order to provide staffing and consulting services to federal government agencies. *See* Duncan Aff., ¶ 2. It provides services to government clients in 34 states and the District of Columbia.  *See* Duncan Aff., ¶ 3.  STG is organized into four divisions based on the type of services the unit performs.  *See* Duncan Aff., ¶ 3.  The divisions are Human Capital Solutions, Management Consulting Services, Administrative and Technical Services and Healthcare and Medical Services.  *See* Duncan Aff., ¶ 3.  In addition, STG

2

has corporate operations which include accounting/finance, business development and human resources services. *See* Duncan Aff., ¶ 4. Plaintiff Montgomery worked in the Healthcare and Medical Services Division and Plaintiff Bigelow worked in the accounting/finance area of corporate services. *See* Duncan Aff., ¶¶ 5, 6. Both Montgomery's and Bigelow's offer letters state that their employment is to be governed by the laws of Virginia. *See* Duncan Aff., ¶¶ 5, 6.

<u>Plaintiff Montgomery</u>

Montgomery was employed by STG in the Healthcare and Medical Services Division from May 2003 to March 2007. She worked as the Program Manager for STG's federal contract with the Division of Immigration Health Service ("DIHS") of the Department of Homeland Security ("DHS"). *See* Duncan Aff., ¶9. Montgomery was provided an office at the client's location to assist in facilitating her work. *See* Complaint, ¶ 7 (hereafter "Comp., ¶ ___.") and Duncan Aff., ¶11. She also had a workspace at STG's Virginia corporate headquarters and worked out of her home in Virginia. *See* Duncan Aff., ¶11. For a six to nine month period, during 2006, Montgomery also worked on other STG contracts, concurrently with DIHS contract. During that time she performed most of her work at STG's Virginia corporate headquarters. *See* Duncan Aff., ¶11. Montgomery worked under several supervisors including Pat Murphy, Tamara de la Camp, Cindy Fischer and Ann Kenny, all of whom supervised Montgomery from STG's Virginia corporate headquarters. *See* Duncan Aff., ¶ 12. All personnel records relating to her were administered and maintained STG's Virginia corporate headquarters. *See* Duncan Aff., ¶ 13. All decisions regarding Montgomery's employment with STG, including the decision to terminate Montgomery, were made by Montgomery's supervisors located in STG's Virginia corporate headquarters. *See* Duncan Aff., ¶ 13.

<u>Plaintiff Bigelow</u>

Bigelow worked in a completely different department and division than Montgomery, held completely different job than Montgomery, had completely different supervisors than Montgomery, and alleges claims arising out of different sets of facts than Montgomery. *See Generally* Complaint and Duncan Aff. ¶ 18.[1]

In March 2004, Bigelow accepted a position with STG as Assistant Controller and served as such for the remainder of his employment, which ended in January 2007. *See* Comp., ¶ 8 and Duncan Aff., ¶ 14. He never worked for STG in the District of Columbia. *See* Duncan Aff., ¶14. During his term as the Assistant Controller, Bigelow worked under several corporate executives including Jeff Bell, the Controller who became the Vice President of Finance, and Judy Crocker, who became the Controller when Mr. Bell was promoted. *See* Duncan Aff., ¶16. Each of these individuals supervised Bigelow from STG's Virginia corporate headquarters. *See* Duncan Aff., ¶16. Bigelow alleges that, as Assistant Controller, he was assigned all accounting functions, except payroll, for STG's contract with DIHS in Washington, D.C. *See* Comp., ¶ 8. Bigelow was assigned to oversee and facilitate the billing and contract administration functions for all of STG's business. *See* Duncan Aff. ¶ 15. His work included more than 100 contracts and/or task orders, including the DIHS contract. *See* Duncan Aff. ¶ 15. The DIHS contract was not, by any means, the only contract on which he worked. *See* Duncan Aff. ¶ 15. The accounting functions he performed on the DIHS contract and any other accounting work was at all times performed in STG's Virginia corporate headquarters. *See* Duncan Aff., ¶ 15.[2]

Bigelow does not contend that he worked in the same office or under the same supervisors as

---

1 Both plaintiffs have made a pendent state law claim for wrongful discharge, alleging that both reported financial wrongdoing, albeit with no specific details. On their own, these claims would not be proper in federal court at all and based on the terms of the employment offer letters are governed by Virginia law.

2 The complaint fails to disclose that he worked in Virginia. It states only that he worked on the accounting for the DIHS contract, perhaps to suggest a link to the District that does not in fact exist.

4

Montgomery.  Their terminations did not occur at the same time.  In fact, Bigelow was terminated almost two months before Montgomery.  *See* Duncan Aff. ¶ 18.  Bigelow worked exclusively from STG's Virginia corporate headquarters.  *See* Duncan Aff., ¶ 14.  All decisions regarding Bigelow's employment with STG, including the decision to terminate Bigelow, were made by Bigelow's supervisors located in STG's Virginia corporate headquarters.  *See* Duncan Aff., ¶ 17.

**Argument**

I.    **Plaintiffs' Claims Are Misjoined Under Fed. R. Civ. P.  20(a) and Should Be Severed Pursuant to Fed. R. Civ. P. 21 Where the Plaintiffs Had Different Jobs, in Different Departments, under Different Supervisors and Where Their Claims Do Not Arise Out of the Same Transactions.**

Under Rule 20 (a) of the Federal Rules of Civil Procedure, cases are properly joined "if they (1) 'aris[e] out of the same transaction or occurrence, or series of transactions or occurrences and (2) if any question of law or fact common to all [the plaintiffs] will arise in the action.' " *Disparte v. Corporate Executive Bd.*, 223 F.R.D. 7, 10 (D.D.C. 2004) (*citing* Fed.R.Civ.P. 20(a)).  Thus, both prongs of the rule must be met for joinder to be proper.  *Disparte*, at 10.  Pursuant to Rule 21 of the Federal Rules of Civil Procedure, courts may sever claims at any stage of the action if the requirements of Rule 20(a) have not been met.  *Id.* at 11.   Rule 21, however,  is not limited in operation to cases of misjoinder situations. *Leesona Corp. v. Cotwoll Mfg. Corp.*, 204  F. Supp. 139, 141 (W.D.S.C. 1962) *aff'd*, 315 F.2d 538 (4th Cir. 1963) ( even where venue is proper but the forum is inconvenient to some or all claims, the court might properly sever and transfer the claim to the more convenient forum).   Even if joinder is proper under Rule 20(a), when considering a motion to sever under Rule 21, courts can look at whether the settlement of the claims or judicial economy would be facilitated; whether prejudice would be avoided if severance were granted; and whether different witnesses and documentary proof are required for the separate claims." *Id*. at 12.

In this case, Plaintiffs' claims are not properly joined because (1) they do not arise out of the same transaction or occurrence, or series of transactions or occurrences; and (2) they do not involve common questions of law or fact. Even if joinder were proper, however, severing these Plaintiffs' claims into two cases is appropriate because prejudice would be avoided and different decision makers, other witnesses and documents of proof are required. *See Demboski v. CSX Transp., Inc.*, 157 F.R.D. 28, 30 (S.D. Miss. 1994) (trying four separate cases together would place an unfair burden on the Defendant forcing it to defend four substantially different sets of facts).

    a.    **Plaintiffs' Cases Must Be Severed Because They Do Not Meet the First Requirement For Joinder Under Fed. R. Civ. P. 20(a) in that They Do Not Arise Out of the Same Transaction, Occurrence, or Series of Transactions or Occurrences.**

"In order to satisfy the first prong of [rule 20(a)], the claims must be logically related." *Disparte* at 10 (citing *Moore v. New York Cotton Exchange*, 270 U.S. 593 (1926)). In satisfying the first prong, however, it is not enough that plaintiffs' claims rest upon the same general theory of law, such as race discrimination. *Bailey v. Northern Trust Co.*, 196 F.R.D. 513, 517 (N.D. Ill. 2000). When claims arise out of "discrete and individualized circumstances", courts often sever as they are not logically related. *Id.* at 517. Courts will sever employment discrimination claims for not being logically related when the alleged discrimination occurs at the hands of different supervisors, at different times, and for different reasons. *Id.* at 517; s*ee also Henderson v. AT&T Corp.*, 918 F.Supp 1059, 1063 (S.D.Tex. 1996) (claims severed because plaintiffs "worked on separate teams in separate offices calling on separate customers") *abrogated by Holmes v. Energy Catering Services, LLC*, 270 F.Supp.2d 882 (S.D.Tex. Jun 27, 2003) (on whether location of counsel should be considered in the transfer analysis); *Smith v. North Am. Rockwell Corp. Tulsa Div.*, 50 F.R.D. 515, 522-23 (N.D. Okla. 1970) (despite common allegations of missed promotions for discriminatory

reasons, claims severed because "denials of promotion would have been made by different supervisory personnel in different labor union and work environments, with respect to employees performing different types of work."); *Weir v. Litton Bionetics, Inc.*, 1986 WL 11608, *6 (D.Md. May 29, 1986) (despite reliance on the same legal theories, claims severed because plaintiffs worked in different divisions, and divisions "were operated independently of each other with virtually no interchange of personnel").

Plaintiffs' claims do not meet the requirements for joinder under Rule 20(a). Plaintiffs' claims arise from distinct and unrelated employment actions taken by different managers, at different times, in different departments, and for entirely different reasons. Montgomery alleges that she was subjected to race discrimination, age discrimination and retaliation while serving as a Program Manager for STG in the District of Columbia. Bigelow claims he was subject to race discrimination, and age discrimination in promotion decisions and in his termination from his position as Assistant Controller. The supervisors involved in the decision involving Montgomery were not the same as those involved in the decision and acts relating to Bigelow. *See* Duncan Aff. at ¶ 8. And, while the alleged acts and omissions by STG relating to Montgomery and Bigelow may have occurred during the same general time period, they did not occur at or during the exact same time frame, nor have Plaintiffs alleged that the decisions were connected in any way. Montgomery and Bigelow have not alleged that there was any relationship between the alleged denials of promotions, harassment or their terminations.

Although the factual allegations in the Complaint are sparse, there is no allegation that the alleged discriminatory actions were carried out by common actors, at a common time or using common practices. Likewise, Plaintiffs' respective EEOC Charges were filed individually and do not demonstrate any similarities between their respective claims. In short, each alleged adverse

employment action "was an individualized transaction or occurrence, not part of some unified series of transactions or occurrences, and not amenable to joinder under Rule 20(a)." *Bailey*, 196 F.R.D. at 516.

*Disparte* is instructive and determinative in this case.  There, three different plaintiffs brought claims against a single defendant for discrimination under the Civil Rights Act of 1866, 42 U.S.C. § 1981 and the District of Columbia Human Rights Act.  Consistent with *Bailey*, *Smith* and *Weir,* this Court granted, in part, the defendant's motion to sever because one of the plaintiffs "worked in a different capacity, in a different department, under different supervisors and [therefore] offer[ed] different evidence of racial discrimination than [the other plaintiffs]." *Disparte,* at 15.  Thus, the claims of one of the Plaintiff's did not arise out of the same transaction or occurrence, or series of transactions or occurrences as those of the others.  *Disparte* is identical to this case and other courts have made similar holdings.  In *Grayson v. K-Mart Corp.,* the court explained that "[a]bsent some causal link between a common and identifiable wrongful act on the part of the defendant and the adverse action taken with respect to each plaintiff, the first prong of Rule 20(a) is not satisfied."  *Grayson v. K-Mart Corp.*, 849 F. Supp. 785, 788 (N.D. Ga.) (finding a failure to establish common question of law or fact for joinder of age discrimination claims).  Plaintiffs' claims, as detailed above, do not arise out of the same transaction or occurrence, or series of transactions or occurrences and are, therefore, not properly joined.  Consequently, they must be severed.

> **b.     Plaintiffs' Claims Also Do Not Satisfy the Second Requirement of Rule 20(a) in that Their Claims Do Not Involve Common Questions of Law or Fact**

As set forth above, Rule 20(a) requires a two-pronged analysis.  The second prong requires that plaintiffs' claims involve common questions of law and fact.  Fed. R. Civ. P. 20(a).  As detailed

8

previously, each alleged decision affecting each Plaintiff in this case involved individualized, discrete acts by STG. There is no allegation of any kind that the claims are related in any respect other than the fact that both Montgomery and Bigelow worked for STG and both have made claims based, in part, on race and age discrimination. *Bailey*, 196 F.R.D. at 517; *Smith*, 50 F.R.D. at 522 (general notion that there have been denials of promotions in three cases could not support joinder because denials were made by different supervisory personnel in different work environments with employees performing different types of work). In the case of race or age discrimination, such as that alleged by Montgomery and Bigelow, "whether a defendant unlawfully discriminated against one plaintiff with respect to promotion or job assignment in a given department is not common with the question of whether defendant unlawfully discriminated against another plaintiff in a separate department. The second act constitutes separate, albeit similar, conduct." *Smith*, 50 F.R.D. at 524 [emphasis added]. *See also Weber v. Lockheed Martin Corp.*, No. CIV.A. 00-2876, 2001 WL 274518, at *6 (E.D.La. Mar. 20, 2001) ("Although plaintiffs share a common legal theory of discrimination against defendant Lockheed, the absence of any common issues of fact outweighs each plaintiff's reliance on similar law.").

Plaintiffs do not have common questions of law of fact sufficient to maintain joinder of their claims. As a result, Plaintiffs' allegations against STG fail to satisfy either prong of the Rule 20(a) analysis and are improperly joined. The only remedy is severance of their respective lawsuits.

     **c.**     **Even if not improperly joined, the Plaintiffs' Cases Should Be Severed Because Defendant is Likely to Experience Severe Prejudice and Different Elements of Proof are required for Plaintiffs' Claims**

Even if the Court were to find that Plaintiffs' claims were not misjoined, the Court should consider the prejudice that will undoubtedly be suffered by STG if these cases remain improperly

together and the fact that different elements of proof that will be required for the separate claims. While an examination of the prejudice to STG is not necessary in this case, if the Court determines that it should look at the additional considerations, potential prejudice is possible and the different witnesses and documents needed for the Plaintiffs' separate claims, requires that these Plaintiffs' claims be severed. When there are "different supervisors and job functions among plaintiffs" defendants are likely to experience prejudice because there "is a significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses testimony." *Disparte* at 15. Furthermore, "where facts underlying [one plaintiff's claims] are so divergent [from the others'] . . . there is a high probability that the defendant will encounter prejudice due to jury confusion." *Id*.

Because the claims of discrimination alleged by Montgomery and Bigelow occurred in different departments, during different time periods, and at the hands of different individuals, STG would likely encounter prejudice if Plaintiffs' claims were tried together because there is a "significant likelihood that a single jury would be confused by the different items of evidence and the different witnesses' testimony." This is especially true given the fact that only Montgomery's claims allege unlawful retaliation. Thus, Plaintiffs' claims must be severed as failure to do so is likely to result in severe prejudice to STG. In addition, both parties will be required to present different witnesses and different documentary evidence to make or defeat Plaintiffs' claims. Since there were no overlapping decision makers, departments, duties or time periods, both cases will have to be proved separately. It would require the court to have two (2) mini-trials within one action. Thus, these claims should not remain together as each would likely need to have its own separate trial.

This case is distinguishable from those cases where courts have denied requests to sever,

10

such as in *Alexander v. Fulton County*, 207 F.3d 1303, 1325 (11th Cir. 2000) (permitting joinder where allegations were based on a "pattern or practice of race-based discrimination"). *See also Mosley v. General Motors Corp.*, 497 F.2d 1330, 1331 (8th Cir. 1974) (permitting joinder where allegations involved a company wide policy). There is nothing in Plaintiff's complaint alleging STG was involved in a pattern and/or practice of discrimination when it made the individualized decisions about these Plaintiffs. To the contrary, each of Plaintiffs' claims alleged individualized discrete discrimination that occurred in different departments at different times and at the hands of entirely different individuals. Thus, Plaintiffs' claims cannot properly remain together and must be severed.

## II.    Plaintiffs' Lawsuit must be Dismissed or Transferred Because at All Times Relevant to the Allegations in the Complaint, All Relevant Events took Place in Virginia and not in the District of Columbia.

Venue for both plaintiffs' 42 U.S.C. § 1981 claims would be proper in both Virginia and the District of Columbia under 28 U.S.C. §1391. STG is headquartered in Alexandria, Virginia and has no office in the District of Columbia. It is registered to do business in the District of Columbia in order to provide services to government clients located there. However, when venue is proper in more than one location and convenience and justice favor adjudication in a different venue, the case may be transferred pursuant to 28 U.S.C. § 1404(a).[3]

Courts commonly use a two-prong test when deciding whether to transfer an action to a different forum. First, the court must determine whether the transfer will enhance the convenience of the parties and is in the interest of justice and then the court must find that the transferee district is one in which the action might have been brought. *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1945). The decision to transfer lies within the sound discretion of the

---

3 Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

District Court and requires a "'flexible and individualized analysis, case by case, consideration of convenience and fairness' including a weighing of a number of "case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S. Ct. 2239, 101 L. Ed. 2d 22 (1988), (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)).  Courts should review the inquiry by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply by adding up the number of contacts.  *See Daniel v. American Board of Emergency Medicine*, 428 F.3d 408, 431-35 (2d Cir. 2005).  In fact, the Court must focus on the activities of the Defendant not the plaintiff.  *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371-72 (11th Cir. 2003).  Additionally, the court should not focus solely on the matters that gave rise to the filing of the action but rather should look at the entire progression of the underlying claim.  *Mitrano v. Hayes*, 377 F.3d 402, 405-06 (4th Cir. 2004).  Section 1404(a) has a broad remedial purpose "to prevent the waste 'of time, energy and money' and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'"  *Van Dusen v. Barrack*, 376 U.S. 612, 616, 84 S. Ct. 805, 11 L. Ed. 2d 945 (1945).  In exercising its discretion, a district court must balance a number of case-specific factors including the private and public interests that promote convenience and fairness.  *Wilderness Soc. v. Babbitt*, 104 F.Supp.2d 10, 12 (D.D.C. 2000).

As set forth in this Court's decision in *Schmidt v. Am. Inst. of Physics*,  322 F. Supp.2d 28, 31-32, (D.D.C.2004), the relevant private interests include the plaintiff's choice of forum, the defendant's choice of forum; whether the claim arose elsewhere, the convenience of the parties, the convenience of witnesses but only to the extent that witnesses may be unavailable for trial; and the ease of access to sources of proof.  *Schmidt*, 322 F.Supp.2d at 31-32.  The relevant public interests include the transferee court's familiarity with the governing laws, the relative congestion of the calendars and the local interest in deciding local controversies at home.  *Id*. at 32.  In *Schmidt*, with

facts similar to this case, this Court transferred a case to Maryland after balancing the very factors which exist in this case and, after balancing the private and public factors, should do so here.

Choice of Forum.    Both Bigelow and Montgomery are residents of Virginia and not the District of Columbia.  While the plaintiff's choice is important, the importance is diminished when the forum is not the plaintiff's home forum and the relevant events took place elsewhere. *See  Nat'l R.R. Passenger Corp. v. R & R Visual, Inc.,* Civ. Action No. 05-822 (GK), slip op., 2007 WL 2071652, at *6 (D.D.C. July 19, 2007); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, 75 S. Ct. 544, 99 L. Ed. 789 (1955); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 592 (E.D. Va. 1992). Where the current court has "no meaningful ties" to the controversy, transfer is appropriate. *Schmidt* 322 F.Supp.2d at 33-34.  *See also Airline Pilots Ass'n v. Eastern Air Lines*, 672 F.Supp. 525, 526 (D.D.C.1987).  Plaintiffs' election to file in the District should not be given weight and instead Plaintiffs' residence should support Defendant's request to transfer their claims to Virginia. Defendant's choice of forum is based on the connections between the events underlying the plaintiffs' claims the Virginia forum, where the documents, witnesses, and corporate offices are located and where all events took place.  *Shapiro, Lifshschitz & Schram, P.C., v. Hazard*, 24 F.Supp.2d 66, 72 (D.D.C.1998).

Location where claims arose.  As indicated above, all of the operative facts surrounding both claims took place in Virginia.  At all times relevant to the complaint, Bigelow was employed by STG in Alexandria, Virginia; he had no connection to Washington D.C.  All employment decisions were made in Virginia.  His supervisors were located in Virginia.  All the employees of the department he worked in were located in Virginia.   Not one operative event giving rise to his lawsuit took place in the District of Columbia.  While Plaintiff Montgomery worked primarily at the client site in the District of Columbia, she also worked out of the Virginia headquarters and at home

in Virginia. She was responsible for a national contract with sites in a number of states. Her employer's supervisors were located in Virginia and all decisions made about her employment were made in Virginia. Because all of the operative events related to both plaintiffs' employment took place in Virginia, the witnesses are primarily located in Virginia. *See In re Eastern Dist. Repetitive Stress Injury Litig.*, 850 F. Supp. 188, 1994 (E.D.N.Y. 1994) (finding convenience of witnesses the single most important factor in the analysis). When the majority of both parties' material witnesses are located in the district to which transfer is sought, courts will transfer cases despite the fact that the transfer may cause the plaintiff, some inconvenience by having to litigate in a forum outside his or her home district. *See Dicken v. United States*, 862 F. Supp. 91, 94-95 (D. Md. 1994). In this case there is no transfer out of the plaintiffs' home districts because both are Virginia residents.

Convenience of the parties and witnesses. Both plaintiffs are residents of Virginia. STG Headquarters is in Virginia. The STG officers and managers with relevant information who would testify on behalf of STG work at the STG headquarters in Alexandria, Virginia. While the distances are not great, the federal courthouse would be more convenient for all of the parties. While Virginia would be more convenient for witnesses, there is no evidence that any witness would be unavailable for trial in the District.

Ease of access. All documents and other records held by STG, relating to the plaintiffs' claims, including personnel records, e-mail etc., are located in Virginia at the corporate office. *See In re Warrick,* 70 F.3d 736, 741 (2d Cir.1991) (location of physical evidence a factor to consider). In addition, all documents that Plaintiffs may have to support their claims would most likely be located at their respective homes in Virginia.

Familiarity with the governing laws and local interest in deciding controversies at home. Of course, both this Court and the Eastern District of Virginia are both familiar with the analysis of

§1981 claims under federal precedent.  Both plaintiffs, however, have added a state court claims, under the D.C. Human Rights Act and common law.  Despite these allegations, both of their offer letters state that their employment relationships with STG are to be governed by the law of Virginia.  Bigelow has no claims under the D.C. Human Rights Act and the District of Columbia's common law and Montgomery's claims may be covered by Virginia law as well.  The pendent state law claims may be better adjudicated in the federal court covering Virginia which is more familiar with the laws of Virginia under which these claims might arise.  *Armco Steel Co. v. CSX Corp.*, 790 F.Supp. 311, 324 (D.D.C.1991).  This factor weighs in favor of transferring this action to Virginia. *Dicken*, 862 F. Supp.at 94-95.

Relative Congestion.  The docket moves much more quickly in Virginia therefore, resulting a faster resolution of the dispute  for both Plaintiff and Defendant.  It is clear, however, that transfer at this early stage in the proceedings would not delay the resolution of these cases.  *See Schmidt,* 322 F.Supp.2d at 35-36.

In conclusion, the balancing of the public and private factors make it clear that convenience and the interest of justice weigh heavily in favor of transfer of these cases to the United States District Court for the Eastern District of Virginia.

**III.    Because the Foregoing Motion Presents Preliminary Issues that Plaintiffs' Cases Must be Severed and Transferred to the Eastern District of Virginia, STG Requests and Extension of Time to Answer of Otherwise Respond to Plaintiffs' Separate Complaints.**

STG has requested that the Plaintiffs' claims be severed and transferred to a different judicial district.  This request is preliminary in nature.  STG requests that once the plaintiffs' claims are severed and transferred to Virginia, Plaintiffs be required to amend their respective complaints to include only his or her causes of action, and that the time for STG to file its Answer or otherwise respond to each of the complaints be extended to fifteen (15) days after receipt of Montgomery's and

Bigelow's amended complaints as provided for in Fed. R. Civ. P. 15.

## Conclusion

For the reasons set forth above, Defendant, STG respectfully requests that this Court (1) sever Plaintiffs' lawsuits into separate actions; (2) dismiss or transfer Plaintiff Bigelow's case to the United States District Court for the Eastern District of Virginia; (3) dismiss or transfer Plaintiff Montgomery's case to the United States District Court for the Eastern District of Virginia; and (4) extend the time for STG to file an answer to Plaintiffs' Complaints pending resolution of the foregoing issues and the filing of separate Amended Complaints by Plaintiffs.

PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHARTERED

By: _____
    Hope B. Eastman, Bar No. 55517
    James R. Hammerschmidt, Bar No. 448128
    4800 Hampden Lane, 7th Floor
    Bethesda, Maryland 20814
    (301) 656-7603
    Attorneys for Defendants

## AFFIDAVIT OF ELLEN DUNCAN

1. My name is Ellen Duncan. I am the Vice President of Human Resources for STG International, Inc., ("STG") a Virginia corporation. I have been in this position since June 2005 and have a 15-year background in human resource management and have a Master's Degree in Organizational Management.

2. STG provides government organizations with a diverse array of mission-critical services in the areas of healthcare programs and medical services, human capital management, management consulting and information technology, and professional and administrative services.

3. STG is headquartered in Alexandria, Virginia, and has no office in the District of Columbia. It is registered to do business in D.C. in order to provide staffing and consulting services to federal government agencies. It provides services to government clients in 34 states and the District of Columbia.

4. STG is organized into four divisions based on the type of work for services the unit performs. The divisions are Human Capital Solutions, Management Consulting Services, Administrative and Tactical Services and Healthcare and Medical Services. In addition, STG has corporate operations which include accounting/finance, business development and human resources services.

5. Plaintiff Montgomery worked in the Healthcare and Medical Services Division. Her offer letter states that her employment is to be governed by the laws of Virginia.

6. Plaintiff Bigelow worked in the accounting/finance area of corporate services. His offer letter states that his employment is to be governed by the laws of Virginia.

7. All decisions with respect to the employment of both Montgomery and Bigelow were solely made by STG officials located at STG's Virginia corporate headquarters.

8. Both Montgomery and Bigelow were management level employees at STG, but they had different jobs, worked in different departments/divisions, and had different supervisors. Different STG officials made the employment decisions about them.

9. Plaintiff Montgomery was a Program Manager in the Healthcare and Medical Services Department. For most of her time at STG, she was assigned to work on STG's federal contract with the Division of Immigration Health Service (ADIHS@) of the Department of Homeland Security (ADHS@), which is headquartered in Washington D.C. Under the contract, STG provides medical staffing personnel to immigrant detention locations throughout the United States.

10. Montgomery's job was to manage the contract deliverables and people who provided services under STG's contract to DIHS locations, which included as many as 21 facilities

in nine (9) states. She acted as the liaison between STG and the client and was responsible for addressing personnel related issues, either directly or through her subordinates.

11. Montgomery was provided an office at the client's location to assist in facilitating her work. She also had workspace at STG's Virginia corporate headquarters and worked out of her home in Virginia. For a six to nine month period, during 2006, she worked on another STG contract, out of STG's Virginia corporate headquarters.

12. During her term as Program Manager, Montgomery worked under several supervisors including Pat Murphy, Tamara de la Camp, Cindy Fischer, and Ann Kenny, all of whom supervised Montgomery from STG's Virginia corporate headquarters. The decisions about her employment were made by these managers.

13. All personnel records relating to her were administered and maintained at STG's Virginia corporate headquarters. All employment decisions about Montgomery were made in STG's Virginia corporate headquarters. All personnel discussions relating to or with Montgomery took place in Virginia, including the meeting at which she was terminated.

14. At all times, Plaintiff Bigelow worked as an Assistant Controller in the STG Accounting Department. His department and his job were located at the STG's Virginia corporate headquarters. He never worked in the District of Columbia.

15. Bigelow was assigned to oversee and facilitate the billing and contract administration functions for all of STG business. His work included more than 100 contracts and/or task orders, including the DIHS contract. The DIHS contract was not, by any means, the only contract on which he worked. The accounting functions he performed on the DIHS contract and any other accounting work was at all times performed in STG's Virginia corporate headquarters.

16. Bigelow worked under several supervisors including Jeff Bell, the Controller who became the VP Finance, and Judy Crocker, and the individual who became the Controller when Mr. Bell was promoted. Each of these individuals supervised Bigelow at STG's Virginia corporate headquarters.

17. All personnel records relating to him were administered and maintained at STG's Virginia corporate headquarters. All employment decisions about Bigelow were made in STG's Virginia corporate headquarters. All personnel discussions relating to or with Bigelow took place in Virginia, including the meeting at which he was terminated.

18. Bigelow was terminated almost two months prior to Montgomery, thus the terminations did not occur at the same time or for the same reason.

19. Bigelow worked in a completely different department and division than Montgomery, held completely different jobs than Montgomery, had completely different supervisors than Montgomery, and his termination resulted from a completely different set of facts than Montgomery.

20. All of STG's administrative functions, including accounting, business development, program administration and human resource management, are handled in the STG's Virginia corporate headquarters.

21. All personnel records and relevant witnesses are located at the STG's Virginia corporate headquarters.

22. I am over eighteen (18) years of age and have personal knowledge of the matters testified to herein. I do solemnly declare and affirm under the penalties of perjury of the laws of the United States and the Commonwealth of Virginia and upon personal knowledge that the contents of the foregoing paper are true.

Ellen Duncan

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CHERYL MONTGOMERY, <u>et al.</u>,        :
                                     :
                 Plaintiffs,        :
                                     :
        v.                       :   Case No. 1:07-cv-01240
                                     :   Judge Roberts
STG INTERNATIONAL, INC.,     :
                                     :
              Defendant.      :

## <u>ORDER</u>

Upon consideration of Defendant STG's Motion to Sever, for Change of Venue and to Extend Time to Respond to Plaintiffs' Complaints,  any opposition filed thereto and/or oral argument thereon, it is this _____ day of _____, 2007, by the United States District Court for the District of Columbia

ORDERED, that Defendant STG's Motion to Sever, for Change of Venue and to Extend Time to File to Respond to Plaintiffs' Complaints, be, and the same is hereby, GRANTED; and it is further

ORDERED, that Plaintiff Cheryl Montgomery's lawsuit against Defendant STG shall proceed as a separate cause of action from that of Plaintiff Gregory Bigelow's lawsuit against STG; and it is further

ORDERED, that Plaintiff Cheryl Montgomery's case against Defendant STG be, and the same is hereby, transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404; and it is further

ORDERED, that Plaintiff Gregory Bigelow's case against Defendant STG be, and the same is hereby, transferred to the United States District Court for the Eastern District of Virginia pursuant to 28 U.S.C. § 1404; and it is further

ORDERED, that Plaintiff Montgomery shall file an appropriate amended complaint within thirty (30) days of this Order; and it is further

ORDERED, that Plaintiff Bigelow shall file an appropriate amended complaint within (30) days of this Order; and it is further

ORDERED, that STG shall file its answer or other responsive pleading to Plaintiffs separate and individualized Complaints within fifteen (15) days after service of Plaintiffs' amended complaints.

_____
Richard W. Roberts, Judge
U.S. District Court for the District of Columbia