IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CHERYL MONTGOMERY, *et al.*, | ) |
| | ) |
|     Plaintiffs | ) |
| | ) |
|   vs. | ) Civil Action No.: 07CV01240(RWR) |
| | ) |
| STG INTERNATIONAL, INC. | ) |
| | ) |
|     Defendant. | ) |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S
MOTION TO SEVER AND TO TRANSFER**

COME NOW, plaintiffs, Cheryl Montgomery and Gregory Bigelow, by and through undersigned counsel, and respectfully submit their opposition to defendant's Motion to Sever and Transfer. For the following reasons, plaintiffs request that defendant's specious motion be denied.

**INTRODUCTION**

Cheryl Montgomery and Gregory Bigelow filed suit against defendant, their former employer, for its willful and malicious discriminatory acts against them on the basis of their race. Plaintiffs' submit that defendant violated 42 U.S.C. §1981 and the District of Columbia Human Rights Act when it denied them promotional opportunities, created an environment of racial hostility and then terminated them without reasonable cause. Additionally, plaintiffs submit that defendant created an impermissibly hostile and abusive environment because of their race and age under circumstances which raise an inference of unlawful employment discrimination. Further, Ms. Montgomery has alleged that she was the subject of impermissible retaliation as a result of her complaints to the EEOC. Finally, both plaintiffs have lodged claims that they were wrongfully terminated after raising concerns about defendant's financial practices relating to a

federal contract. Defendant contends that plaintiffs' claims should be transferred to the state of Virginia. Defendant further claims that plaintiffs' claims should be severed from each other. In short, defendant's motion is baseless.

## FACTS

Defendant, STG International, Inc. ("STG") is a private corporation with over 1000 employees throughout the United States. Though it is incorporated in the Commonwealth of Virginia, it is licensed to do business in the District of Columbia as a foreign corporation. STG provides services exclusively to the federal government as a federal contractor. At the time of the events described herein, STG's contract with United States Department of Health and Human Services, ("DHS") in Washington, D.C. was just one of many contracts it held to provide services to federal agencies in the District of Columbia. Complaint, ¶4.

From May 2003 to January 2007, Ms. Montgomery was employed as the Program Manager for STG's federal contract with the Division of Immigration Health Service ("DIHS") of DHS in Washington, D.C. Complaint, ¶7. At the time of the events alleged in her complaint, Ms. Montgomery worked day to day in the District of Columbia at DIHS's offices. About once a week for a few hours, Ms. Montgomery would travel to STG's offices in Virginia to participate in meetings. See Declaration of Cheryl Montgomery, attached and incorporated herein as Plaintiff's Exhibit "1." When Ms. Montgomery's employment was terminated, her unemployment compensation was administered by the District of Columbia Office of Employment Services. See Statement of Benefit Payments, attached and incorporated herein as Plaintiffs' Exhibit "2."

Gregory Bigelow began working for STG in July 2003. At the time of his termination, Mr. Bigelow was assigned all accounting functions, except payroll, for STG's contract with

DIHS in Washington, D.C. Complaint ¶8.

By their complaint further, both Ms. Montgomery and Mr. Bigelow noticed an atmosphere that was becoming increasingly hostile to African-American employees. Complaint ¶9. On one occasion, STG Chief Executive Officer of STG, Michelle Lee, an Asian woman, made disconcerting comments about his supervision of the African-American accounting staff. Complaint, ¶10. On another occasion, Lee expressed her displeasure that African-American employees lunched together. Complaint ¶18.

Ms. Montgomery and Mr. Bigelow also began to notice that new white male hires had little to no experience in the jobs for which they were hired compared with African-American candidates. Complaint ¶17. And, indeed, both were eventually the victims of discriminatory promotion practices by Lee. Complaint, ¶¶11, 12, 13, 14.

Finally, Ms. Montgomery and Mr. Bigelow became concerned about improper business and financial practices by STG relating to its contract with DIHS. Both Montgomery and Bigelow presented their concerns to STG management in the fall and early winter of 2006. Complaint, ¶20.

On or about December 29, 2006, Ms. Montgomery filed her first complaint with the United States Equal Employment Opportunity Commission and the District of Columbia Office of Human Rights alleging race and age discrimination in employment. Complaint, ¶21. Within a month, Mr. Bigelow had been dismissed without warning, and Ms. Montgomery was the target of escalating harassment and a concerted campaign to remove her from the DIHS account. By March 5, 2007, Ms. Montgomery was also fired for undocumented performance issues. Complaint ¶¶23, 25, 26, 28.

On or about February 12, 2007, Mr. Bigelow filed a complaint with the Equal

Employment Opportunity Commission for the Washington Field Office and the D.C. Human Rights commission alleging race discrimination. Complaint, ¶29.[1]

## ARGUMENT

**I. DEFENDANT HAS FAILED IN ITS BURDEN TO ESTABLISH THAT THE DISTRICT OF COLUMBIA IS THE MOST APPROPRIATE VENUE TO LITIGATE PLAINTIFFS' CLAIMS.**

By its motion to transfer, defendant concedes that both Ms. Montgomery's and Mr. Bigelow's civil cases are properly before this Court. Defendant further concedes that at the time of Ms. Montgomery's termination and the months leading up to it, Ms. Montgomery worked in the District of Columbia. Nevertheless, defendant argues that it would be more "convenient" for the parties to litigate this matter in the Commonwealth of Virginia, instead of the District of Columbia. Defendant is wrong.

Under 28 U.S.C. § 1404(a), "for the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." As the Supreme Court recently stated, the common-law doctrine of forum non conveniens 'has continuing application [in federal courts] only in cases where the alternative forum is abroad,' and perhaps in **rare** instances where a state or territorial court serves litigational convenience best. For the federal-court system, Congress has codified the doctrine [in 28 U.S.C. § 1404(a)] and has provided for transfer, rather than dismissal, when a sister federal court is the more convenient place for trial of the action. Sinochem Intern. Co. Ltd. v. Malaysia Intern. Shipping Corp., 127 S. Ct. 1184, 1190-91, 167 L. Ed. 2d 15 (2007) (citing American Dredging Co. v. Miller, 510 U.S. 443, 449 n.2 (1994)). In short, section 1404(a) vests "discretion in the district court[] to adjudicate motions for transfer according to an

---

[1] Both plaintiffs have requested a Right to Sue letter from the EEOC and intend to amend their

individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 27 (1988); Van Dusen v. Barrack, 376 U.S. 612, 622 (1964).

Further, as the moving party, defendant bears the burden of establishing that the transfer of these actions to another federal district is proper. See Onyeneho v. Allstate Ins. Co., 466 F. Supp. 2d 1, 3 (D.D.C. 2006). Accordingly, defendant must demonstrate that considerations of convenience and the interest of justice weigh in favor of transfer. Trout v. Dep't of Agric., 944 F. Supp. 13, 16 (D.D.C. 1996). A motion to transfer under 1404(a) calls on the district court to weigh in the balance a number of case-specific private and public interest factors. The private interest considerations include:

(1) the plaintiff's choice of forum;

(2) the defendant's choice of forum;

(3) whether the claim arose elsewhere;

(4) the convenience of the parties;

(5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and

(6) the ease of access to sources of proof.

Berenson v. Nat'l Fin. Services, LLC, 319 F. Supp. 2d 1, 2-3 (D.D.C. 2004).

The public interest considerations include "(1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferor and transferee courts; and (3) the local interest in deciding local controversies at home." Id.

Here, defendant has wholly failed in establishing that the private and public interest demand transfer. On the contrary, the facts proffered by both defendant and plaintiffs make

---

complaint to lodge additional claims under Title VII under the United States Civil Rights Act.

plain that the District of Columbia maintains an overriding interest in resolving this dispute.

    **A.**    **The Private Factors Demand That the District of Columbia Resolve this Employment Dispute.**

        1)    The Plaintiff's Choice of Forum.

By filing their complaint for discrimination in the District Court for the District of Columbia, plaintiffs chose to resolve their employment dispute with defendant in this jurisdiction. The claims of both plaintiffs, as defendant concedes, are properly before this Court, and it is well-settled that plaintiffs' initial choice of forum must be afforded substantial deference. Wilderness Soc. V. Babbitt, 104 F.Supp.2d 10, 12 (D.D.C. 2000). Indeed, as this Court has previously held, "a case should not be transferred from a plaintiff's chosen forum simply because another forum, in the court's view, may be superior to that chosen by the plaintiff." Wilderness Soc. v. Babbitt, 104 F.Supp.2d at 12, (citing Pain v. United Technologies Corp., 637 F.2d 775, 783 (D.C. 1980). To be sure:

> [i]t is almost a truism that a plaintiff's choice of a forum will rarely be disturbed and, so far as the private interests of the litigants are concerned, it will not be unless the balance of convenience is strongly in favor the defendant.

Gross v. Owen, 221 F.2d 94, 95 (D.C. Cir. 1955).

Defendant, however, contends that plaintiffs' choice of forum should "not be given weight" since the District of Columbia has "no meaningful ties" to the controversy. See Defendant's Motion, p. 13. Defendant's self-serving view of the facts supporting this meritless contention should simply be rejected. After all, Ms. Montgomery was employed in the District of Columbia. She spent virtually her entire work week in the District of Columbia, going into the corporate office in Virginia once a week for a few hours at a time. Ms. Montgomery's work performance, which defendant claims was "substandard," took place exclusively in this jurisdiction. Further, upon her termination, Ms. Montgomery's unemployment compensation

6

was administered by the District of Columbia Department of Employment Services. And, of course, had the District of Columbia been any other jurisdiction with state power to tax, defendant would have been required to remit District of Columbia payroll taxes for Ms. Montgomery and its other District-based employees.

In addition, both plaintiffs filed their initial administrative complaints, without apparent objection by defendant, in the EEOC's Washington Field Office. For his part, Mr. Bigelow worked on a substantial number of federal contracts with District of Columbia based-clients, and he has alleged facts in his complaint that his termination was at least in part the result of his reporting financial mismanagement relating to a contract with a federal agency located in the District of Columbia. Simply put, plaintiffs' claims are hardly "attenuated" to the District of Columbia.

Moreover, in addition to Ms. Montgomery, defendant maintains a workforce in the District of Columbia almost twice as large as that of its corporate offices in Virginia. Defendant has availed itself of the privilege of the District of Columbia to conduct, as a federal contractor, substantial business in this jurisdiction, and its protests that the District of Columbia has no compelling ties or interest in adjudicating this controversy is utterly meritless.

Despite its substantial ties to the District of Columbia, and Ms. Montgomery's actual physical and legal employment in the District, defendant's reliance on the locus of plaintiffs' residence in support of its motion is equally unavailing. Here, since the defendant and plaintiffs' claims have a substantial connection to the District, that plaintiffs' reside in another jurisdiction is not a significant factor weighing against the District of Columbia litigating this employment dispute. DeLoach v. Philip Morris Cos., 132 F. Supp. 2d 22, 24 (D.D.C. 2000). In short, defendant has proffered no specific facts which should cause this Court to disregard plaintiffs'

7

choice of forum.

      2)      <u>Location Where the Claims Arose</u>

As argued previously, Ms. Montgomery's work performance took place in the District of Columbia. The federal client for which she performed those duties and for which both plaintiffs alleged defendant engaged in financial improprieties is located in Washington, D.C. Witnesses and documents of non-party government witnesses relevant to Ms. Montgomery's work performance and plaintiffs' assertion regarding STG's management of the contract are located in the District of Columbia. Contrary to defendant's complaints, decisions concerning Ms. Montgomery's performance and employment were substantially influenced by federal administrators located in the District of Columbia. And, of course, Ms. Montgomery's on-site colleagues possessing material information regarding her work performance are located in Washington. <u>See</u> Complaint ¶19, 22. Cast in this light, defendant's factual contentions that the majority of the potential witnesses are located in Virginia is baseless.

      3)      <u>Convenience of the Parties and Witnesses</u>

Litigation of plaintiffs' claims in the federal court in the District of Columbia is no more inconvenient to defendant than the federal court house in Alexandria. To be sure, the distance between both jurisdictions is minimal, and residents and workers in both jurisdictions move freely and quickly between the two. Both courthouses are close to metro stations. Although defendant baldly claims that Virginia would be "more convenient for witnesses," it makes no factual proffer that all of the witnesses who work in the Virginia office, much less on-site STG employees and federal employees, actually live in Virginia, as opposed to Maryland and the

District.[2]  Indeed, their own counsel's offices are located in Bethesda, Maryland.  Given that witnesses are likely to be traveling from different points in the Metropolitan area other than Virginia, including Maryland, the District of Columbia, is centrally located and convenient for all prospective witnesses.  In short, defendant has wholly failed to establish any hardship as a result of litigating this matter in the District of Columbia.

Defendant, of course, ignores the inconvenience to plaintiffs arising from a transfer to Virginia.  Plaintiffs' counsel is not a member of the bar of the Eastern District of Virginia.  Should plaintiffs be forced to endure a transfer of this litigation, they would be required to retain new or additional counsel on their behalf.  While the convenience of counsel is not ordinarily relevant, the substantial expense and time associated with plaintiffs finding and retaining new counsel certainly is.  Plaintiffs are entitled to the counsel of their choice, just as defendant is.

4) <u>Ease of Access to Records</u>

As argued previously, records relevant to this employment dispute are located in Virginia and the District of Columbia, where Ms. Montgomery actually worked and financial documents relating to defendant's management of the DIHS contract are stored.  Defendant has fallen woefully short in establishing that this matter should be transferred because corporate records are just across the bridge in Virginia.  The speciousness of this claim is belied by the fact that defendant's own counsel is physically located at a distance <u>farther</u> than the federal courthouse in the District of Columbia, and even plaintiff's downtown office.  Defendant must transfer of those documents to its counsel's office presumably whether the matter remains in the District of Columbia or transferred.  Simply put, that some documents relevant to this litigation are in

---

[2] Indeed, Jeff Bell, STG's Vice President of Finance, and Mr. Bigelow's former supervisor, lives in the District of Columbia and is STG's resident agent for service of process in the District of Columbia.

9

Virginia are simply of no moment.

    **B.**    **Public Factors Demand That the District of Columbia Resolve this Employment Dispute.**

        1)    Familiarity with the Governing Laws and Local Interest in Deciding Controversies at Home.

As defendant concedes, both this Court and the federal court in Virginia are intimately familiar with deciding employment discrimination cases. Since Ms. Montgomery's claims under the District of Columbia Human Rights Act would survive a transfer to another jurisdiction, as defendant appears to concede, this Court is inherently more competent to adjudicate claims under the local civil rights statute. Indeed, the District of Columbia maintains a compelling state interest in deciding disputes involving employees working within its jurisdiction. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 509 (1947); Wilderness Soc. v. Babbitt, 104 F.Supp.2d at 16-17. Once again, defendant has availed itself of the privilege of doing business in the District of Columbia. It employs more workers who physically come into the District to perform their duties on a daily basis than it does in Virginia. Defendant's and its District-based employees' ties to the District of Columbia are hardly transient. In exchange for granting defendant the privilege of doing business in its borders, the District of Columbia expects defendant to conform to its laws governing the civil rights of employees working within its borders. That the District of Columbia has a compelling interest in ensuring that its workers are treated in conformity to District of Columbia law, including federal civil rights law as interpreted by the local federal courts and the District of Columbia Human Rights Act, can simply not be argued. Indeed, any contention to the contrary would be untenable. As the seat of the federal government, literally hundreds of thousands of workers are employed in the District of Columbia by federal contractors, many of whom do business in the District as foreign corporations. In sum,

defendant cannot reasonably argue that it may deny civil rights and remedies conferred by the laws of the District of Columbia to its District-based employees.

Defendant also argues that "offer letters" supposedly given to each plaintiff contain a Virginia choice of law provision governing its employment relationship with plaintiffs. As an initial matter, defendant has, curiously, failed to proffer the actual letters in support of its motion. Most importantly, defendant has woefully failed to establish that any purported offer letter constituted an effective waiver of substantive legal rights. See Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20 (1991).

In sum, the District of Columbia's interest in adjudicating plaintiffs' claims is overwhelming.

        2)     Relative Congestion

Finally, defendant asserts that the Eastern District's "rocket docket" will result in a "faster" resolution of the parties' dispute. Plaintiffs submit, however, that the extreme speed of litigation under the rocket docket does not in every instance result in a "fairer" resolution for the parties.

In conclusion, each and every factor proffered by defendant weighs strongly against disregarding plaintiffs' choice of forum and choice of counsel in favor of a transfer to Virginia, and defendant's protests to the contrary are without merit.

## II.  PLAINTIFFS' CLAIMS ARE PROPERLY JOINED.

In their civil complaint, plaintiffs proffer evidence of an environment of workplace discrimination in hiring, promotion and other terms and condition of employment, as well as racially demeaning treatment. Plaintiffs further allege that they were wrongfully terminated after they presented concerns about improper financial practices relating to STG's contract with DIHS in the District of Columbia.

By its motion, defendant complains that Ms. Montgomery's and Mr. Bigelow's claims are improperly joined because, in its view, plaintiffs' claims arise "from distinct and unrelated employment actions taken by different managers." See Defendant's Motion, P. 7. Whether the ultimate employment decisions were taken by "different supervisors" or by one, STG President and CEO, Michelle Lee, is a fact in dispute in this litigation.[3] It was, after all Lee who made comments about Mr. Bigelow's race and Lee who asked that black employees refrain from lunching together. Further, Lee appeared to be the deciding official in many of the employment decisions alleged in plaintiffs' complaint. See e.g., Complaint ¶17. Defendant's prospective contentions that Lee played little to no role in the adverse actions alleged by plaintiffs will be vigorously contested in this litigation. In short, whether the adverse employment actions against each plaintiff were made by different supervisors or, ultimately the same individual is a disputed issue of fact.

Defendant's further complaints that Ms. Montgomery and Mr. Bigelow have not alleged any relationship between the discriminatory treatment and eventual termination are similarly baseless. After all, soon after presenting their concerns about defendant's financial practices on

---

[3] As an initial matter, plaintiffs submit that they are entitled to conduct discovery to reveal additional facts supporting its claims of a systematic campaign by Lee to terminate plaintiffs. See Disparte v. Corporate Executive Bd., 223 F.R.D. 7, n. 12 (D.D.C. 2004).

12

the DIHS account to management in late 2006, on December 29, 2006, Ms. Montgomery filed her first EEOC complaint in the Washington Field Office. Little more than two weeks later, Mr. Bigelow had been summarily dismissed and the harassment of Ms. Montgomery began to escalate. Complaint ¶23, 28. By March 5, 2007, Ms. Montgomery was similarly dismissed. Plaintiffs, in sum, have alleged facts which a reasonable jury could certainly conclude that their eventual dismissals were related.

Moreover, plaintiffs have alleged by their complaint evidence of demeaning and disparate treatment of defendant's African-American employees. See Complaint ¶¶15-18. As intent and motive of racial bias will be at issue in this matter, evidence of the disparate treatment contained in the complaint, as well as others yet uncovered, may be admissible on behalf of each plaintiff. Moreover, plaintiffs have specifically alleged a pattern of conduct by Lee and defendant which discriminated against them because of their race. Complaint ¶9. See Disparte v. Corporate Executive Bd., 223 F.R.D. 7 at 16.

Finally, the facts and circumstances surrounding each plaintiff's employment, and the corresponding witnesses and documentary evidence do not vary dramatically. Unlike the plaintiffs in Disparte, Ms. Montgomery and Mr. Bigelow worked in a small atmosphere where the corporation's CEO herself was intimately involved in employment actions, even going so far as advising the African-American employees on who they should lunch with. Though plaintiffs worked in different departments, they both worked on the same federal contract, possessed similar information regarding defendant's financial management of that contract, and both suffered adverse employments actions soon after advising management of these issues. Plaintiffs', in sum, have alleged sufficient facts to satisfy the transactional and common questions of fact test to merit the presentation of their claims to a single jury, and defendant's

frivolous motion must be rejected.

Similarly unavailing is defendant's meritless protest that it would be prejudiced by adjudicating plaintiffs' claims together because the "jury would be confused." Defendant's bald complaints on this score are once again unfounded since federal juries are routinely asked to decipher testimony and evidence infinitely more complex than this matter.

Further, severance of plaintiffs' claims would almost certainly result in duplicative discovery and waste of judicial resources. Any minimal prejudice defendant may theoretically sustain from a joint trial of Ms. Montgomery and Mr. Bigelow "does not outweigh the policy goals of permissive joinder, which promote[s] trial convenience and expedites the resolution of lawsuits." Disparte v. Corporate Executive Bd., 223 F.R.D. at 12. As the court stated in Disparte, properly crafted jury instructions, as this Court is likely to propound, will diminish any potential confusion associated with a joint presentation of plaintiffs' claims. Id. Defendant's motion to sever must be denied.

## CONCLUSION

WHEREFORE, Plaintiffs Cheryl Montgomery and Gregory Bigelow respectfully requests that defendant's specious Motion be denied.

>Respectfully submitted,
>
>   /s/ Lisa Alexis Jones
>Lisa Alexis Jones, PLLC
>1200 G Street, N.W. Suite 800
>Washington, D.C. 20005
>(202) 434-4507
>(202) 434-8707 Fax
>
>*Counsel for Plaintiff*

Dated: September 24, 2007

**CERTIFICATE OF SERVICE**

    I certify that a true and correct copy of the foregoing Opposition and Proposed Order was sent via ECF this 24th day of September 2007, to Hope B. Eastman, Esq. and James R. Hammerschmidt, Esq., 4800 Hampden Lane, 7th Floor, Bethesda, Maryland 20814.

                                        /s/ Lisa Alexis Jones
                                        Lisa Alexis Jones

# DECLARATION OF CHERYL MONTGOMERY

My name is Cheryl Montgomery. I am the plaintiff in the matter of <u>Montgomery v. STG International</u>, Case No. 07 CV 1240 (RWR).

I worked for STG International from May 2003 to March 2007.

From the time I began working on STG's contract with the United States Division of Immigration Health Service ("DIHS") until my termination in March 2007, my primary work location was in Washington, D.C. I had permanent office space in the District of Columbia and worked in the District forty hours per day, five days a week. About once a week, I traveled to STG's offices in Virginia for meetings. For a period of about six months in 2006, I worked primarily at STG's offices in Virginia. During that period, I was the primary point of contact for the DIHS contract. In the four years of my employment with STG, other than during the above period in 2006, my primary employment residence was the District of Columbia.

Witnesses who will have relevant evidence regarding my job performance and treatment by defendant are employed by the United States government in the District of Columbia.

During my employment tenure, Michelle S. Lee, CEO of STG International, took part in ultimate decisions related to my employment.

I am over eighteen years of age and have personal knowledge of the matters testified to herein. I do solemnly declare and affirm under the penalties of perjury of the laws of the United States and the District of Columbia and upon personal knowledge that the contents of the foregoing are true and accurate.

Cheryl Montgomery

## GOVERNMENT OF THE DISTRICT OF COLUMBIA  DEPARTMENT OF EMPLOYMENT SERVICE

| SOCIAL SECURITY NUMBER | CLAIMANT'S NAME | WBA | PROGRAM | WEEK 1 ENDING |
|---|---|---|---|---|
| 240 11 5824 0 | MONTGOMERY/CHE | 359.00 | 1 | 09/08/2007 |
| LOCAL OFFICE NUMBER | BENEFIT YEAR ENDING | \multicolumn{2}{c}{BALANCE} | WEEK 2 ENDING |
| 87 | 03/01/2008 | \multicolumn{2}{c}{359.00} | 09/15/2007 |

[barcode]

DO NOT WRITE IN THIS BOX (FOR DOES USE ONLY)

UNANSWERED QUESTIONS, OMITTED SIGNATURE, OR DAMAGED CARD WILL DELAY YOUR BENEFIT PAYMENTS. ANSWER THE FOLLOWING BY PLACING AN "X" IN A BLOCK INDICATING EITHER YES OR NO FOR THE CORRESPONDING WEEK.

| | WEEK 1 YES/NO | WEEK 2 YES/NO | | WEEK 1 EARNINGS | WEEK 2 EARNINGS |
|---|---|---|---|---|---|
| 1 | | | WERE YOU ABLE, AVAILABLE AND ACTIVELY SEEKING WORK DURING THE WEEKS CLAIMED? | | |
| 2 | | | DID YOU PERFORM WORK DURING WEEKS CLAIMED? IF YES, INDICATE GROSS AMOUNT BEFORE ANY DEDUCTIONS IN CORRECT BLOCK AND COMPLETE THE SECTION BELOW. | • | • |
| 3 | | | DID YOU RECEIVE SEVERANCE PAY DURING THE WEEKS CLAIMED? IF YES, INDICATE GROSS AMOUNT IN THE CORRECT BLOCK. | • | • |
| 4 | | | HAS THERE BEEN A CHANGE IN YOUR PENSION, TRAINING OR SCHOOL STATUS? | | |
| 5 | | | DID YOU REFUSE WORK, QUIT A JOB, OR WERE YOU DISCHARGED FROM A JOB DURING WEEK 1, OR WEEK 2? | | |
| 6 | | | DID YOU RETURN TO FULL TIME WORK? IF YES, COMPLETE THE SECTION BELOW. | | |

**CERTIFICATION:** I HEREBY CERTIFY THAT THESE STATEMENTS ARE TRUE AND CORRECT. I UNDERSTAND THAT THE LAW PROVIDES PENALTIES FOR FALSE STATEMENTS TO OBTAIN OR INCREASE BENEFITS.

SIGNATURE: _____     DATE: _____

☞ THIS SECTION MUST BE COMPLETED AND RETURNED IF YOU ANSWERED 'YES' TO QUESTION ❷ OR ❻.

| DATE RETURNED TO FULL TIME WORK: _____ | | 240 11 5824 0 | |
|---|---|---|---|
| DATE(S) WORKED | EMPLOYER NAME AND ADDRESS | | TELEPHONE NO. |
| | | | |

MAIL TO: DEPARTMENT OF EMPLOYMENT SERVICES, P.O. BOX 37006, WASHINGTON, D.C. 20013
IF CHANGE OF ADDRESS, **DO NOT MAIL**. BRING THIS FORM TO YOUR LOCAL OFFICE.

BENEFITS IN THE AMOUNT OF    $648.00 HAVE BEEN TRANSFERRED TO
YOUR BANK ACCOUNT.    THE FUNDS SHOULD BE AVAILABLE BY
09/06/2007

WEEK END: 09/01/2007.

JOB SERVICE "Helping People Help Themselves"    ck403a.frm rev 1

**DECLARATION OF GREGORY BIGELOW**

1) My name is Gregory Bigelow. I am the plaintiff in the matter of <u>Montgomery, et al., v. STG International</u>, Case No. 07 CV 1240 (RWR).

2) I began working for STG as an independent consultant in July 2003. In March 2004, Bigelow accepted a position as Assistant Controller. As one of two assistant controllers at STG, Bigelow was assigned all accounting functions, except payroll, for STG's contract with DIHS in Washington, D.C.

3) During my entire employment tenure with STG International, I don't recall being presented with an "offer letter."

4) Witnesses who will have relevant evidence regarding my job performance and treatment by defendant are employed by the United States government in the District of Columbia.

5) During my employment tenure, I spent about sixty percent of my time on contracts based in the District of Columbia.

6) Based upon my knowledge of STG contracts and revenue, I estimate that approximately sixty five percent of STG's revenue is derived from clients based in the District of Columbia. At the time of my termination, I recall only two Virginia-based clients which represented a fraction of STG's revenue.

7) During my employment tenure, Michelle S. Lee, CEO of STG International, took part in ultimate decisions related to my employment.

8) I am over eighteen years of age and have personal knowledge of the matters testified to herein. I do solemnly declare and affirm under the penalties of perjury of the laws of the United States and the District of Columbia and upon personal knowledge that the contents of the foregoing are true and accurate.

<u>S/ Gregory U. Bigelow</u>
Gregory Bigelow

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CHERYL MONTGOMERY, *et al.*, ) | |
| ) | |
| Plaintiffs ) | |
| ) | |
| vs. ) | Civil Action No.: 07CV01240(RWR) |
| ) | |
| STG INTERNATIONAL, INC. ) | |
| ) | |
| Defendant. ) | |

**ORDER**

Upon consideration of plaintiffs' Opposition to Defendant's Motion to Sever and Transfer, and the record herein, it is hereby

**ORDERED**, that defendant's motion be and hereby is **DENIED**.

_____
Judge Richard W. Roberts

Copies to via ECF:

Hope B. Eastman, Esq.

James R. Hammerschmidt, Esq.

Lisa Alexis Jones, Esq.